## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

DAMON McCORMICK                                                    PLAINTIFF

v.                                       CIVIL ACTION NO. 4:14CV-P82-JHM

CPT. MEL FLOYD *et al.*                                         DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is currently before the Court on initial review of Plaintiff Damon

McCormick's *pro se* complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*,

114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

For the reasons that follow, the Court will dismiss the official-capacity claims and provide

Plaintiff with an opportunity to amend the complaint.

### I.  SUMMARY OF CLAIMS

Plaintiff is a convicted inmate currently incarcerated at the Fulton County Jail.  He brings

suit under 42 U.S.C. § 1983 complaining of incidents occurring during his incarceration at the

Henderson County Jail (HCJ).  He sues the following officials in their official capacity:  HCJ

Captain Mel Floyd, Nurse Lea at the HCJ and Southern Health Partners, and HCJ Colonel Mrs.

Gibson.[1]

Factually, Plaintiff reports that he has been using a wheelchair for almost a year.  He

states that three doctors ordered the wheelchair for his use until he is able to get two total knee

replacements.  He claims that upon his arrival at the HCJ, Defendant Nurse Lea told him that he

could not use the wheelchair and that Defendant Floyd agreed with her.  Plaintiff contends that

"for 2 months Nurse Lea had HCDC staff Thinking I was faking."

---

[1]In the body of the complaint, Plaintiff mentions "Co. Johnson" and "Lt Rollie," but he does not name them
as Defendants.

Specifically, Plaintiff claims as follows:

I was in #401 on the floor Sun July 6 and hurt myself trying to get up.  On the 7th I asked Nurse Lea and Cpt Floyd if I could use a wheelchair to go to the handicap shower.  They said no to both.  That night I fell hurting myself real bad coming back from shower.  Tue 8th Cpt Floyd ordered to put me in a cell with a bunk and Lea called my sister to bring me my wheelchair.  I had to fall and get hurt before they let me have it . . . . on 7-15 Co. Johnson put me in  525 on the floor.  He said he didnt care and I am staying on the floor.  Lt Rollie told me the same thing.  They went outside cell and was taunting me cause I was upset . . . . I told them to take me to the hole cause there is a bunk.  They laughed and told me I was staying on the floor like it or not.  Later that day I tried to get up for pill call and my knee buckled and hurt myself real bad.  The Colonel told Lt Rollie to take me to the hole.  Rollie told me to grab my belonging that what I didnt take was staying there.  He is on camera trying to make me carry bags in my wheelchair.  Putting property on my head and laughing cause Nurse Lea told them I was faking.

Plaintiff claims that the next morning, Defendant Floyd took him to "the Colonels office" [presumably Defendant Colonel Mrs. Gibson's office]; that Defendant Nurse Lea took two x-rays of Plaintiff's knees; and that Defendant Nurse Lea told the Colonel that the x-rays were negative and that Plaintiff "was faking."  Plaintiff maintains that he told the Colonel to look at his medical files wherein his doctor said he needed total replacements of both knees; the Colonel, however, "said Nurse Lea's word is all she needed."

Then, claims Plaintiff, Defendant Floyd was "pushing me back to the hole and I was real mad and arguing.  In 500 hall the Capt got in front of me.  Grabbed my collar on both sides with his fists doubled up and short punched me in my jaw."  Plaintiff states that Defendant Floyd "told me if I said another word he would jerk me out of my chair and He and his C.O.'s who were there and kick my ass cause I was faking injury the whole time."  Plaintiff reports that later than same day while trying to get his mail, his knee gave out on him again.  According to Plaintiff, "Nurse Lea and Cpt Floyd came to my cell.  Floyd and one of his CO's picked me up held me by my arms restraining me while Nurse Lea pulls out my pants by the waist and looks down the back and then the front against my objections."  Plaintiff states, "Upon leaving Cpt

2

Floyd told me if I fell again I better not holler for help cause he would come and spray me and then taze me."

Following these incidents, Plaintiff had his sister call his five physicians, who sent records to the jail.  "After the records arrived and were viewed Lea and Floyd realized what they had done and I was shipped immediately to Fulton Co."

As relief, Plaintiff seeks monetary and punitive damages.

## II.  STANDARD OF REVIEW

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A.  Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* § 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as

3

true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing

*Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "A pleading that

offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will

not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### III.  <u>ANALYSIS</u>

Plaintiff sues Defendants in their official capacity only.  "Official-capacity suits . . .

'generally represent [] another way of pleading an action against an entity of which an officer is

an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City

Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).  Plaintiff's official-capacity claims against

Defendants, therefore, are actually against Henderson County. [2]  *See Lambert v. Hartman*, 517

F.3d 433, 440 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his

official capacity was equivalent of suing clerk's employer, the county).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct

issues:  (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so,

whether the municipality is responsible for that violation.  *Collins v. City of Harker Heights,

Tex.*, 503 U.S. 115, 120 (1992).  The Court will address the issues in reverse order.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor -- or, in

other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."

*Monell*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v.*

---

[2]It is unclear whether Defendant Nurse Lea is an employee of Henderson County or Southern Health Partners.  Nevertheless, the same municipal-liability analysis applies to § 1983 claims against a private corporation like SHP.  *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well."); *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) ("CMS's [Correctional Medical Systems, Inc.,] liability must also be premised on some policy that caused a deprivation of [plaintiff's] Eighth Amendment rights.").

*City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994).  "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'"  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in original).  To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy."  *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).

None of the allegations in the complaint demonstrates that any alleged wrongdoing or injury occurred as a result of a policy or custom implemented or endorsed by Henderson County. Accordingly, the complaint fails to establish a basis of liability against the municipality and fails to state a cognizable § 1983 claim.  Therefore, the official-capacity claims against all Defendants will be dismissed. [3]

Before dismissing the action, however, the Court will provide Plaintiff with an opportunity to amend the complaint to sue Defendants in their individual capacity and to name any additional Defendants he may wish to sue related to the incidents occurring at the HCJ alleged in his complaint.  *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[U]nder Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA [Prison Litigation Reform Act].").

---

[3] Plaintiff having failed to allege a policy or custom by either Henderson County or SHP that caused his alleged harm, the official-capacity claims against Defendant Nurse Lea, as an employee of either the county or SHP, must be dismissed.

## IV.  ORDER

For the foregoing reasons,

**IT IS ORDERED** that the claims against Defendants Cpt. Floyd, Nurse Lea, and Col. Gibson in their official capacity are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that within **30 days** from the entry date of this Memorandum Opinion and Order, Plaintiff may amend the complaint to name Defendants in their individual capacity and to name as Defendants any other officers/employees allegedly involved in the HCJ incidents about which he complains in his original complaint.

The Clerk of Court is **DIRECTED** to place the instant case number and word "Amended" on a § 1983 complaint form and send it, along with eight blank summons forms, to Plaintiff for his use should he wish to amend the complaint.

**Should Plaintiff file no amended complaint within 30 days, the Court will enter a final Order dismissing the entire action.**

Date:  January 5, 2015

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc:     Plaintiff, *pro se*
        Defendants
        Henderson County Attorney
4414.005

6